[Cite as *State v. Redd*, 2014-Ohio-491.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99624**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARNELL REDD, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541880

**BEFORE:** S. Gallagher, J., Boyle, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By: Jeffrey Gamso
Erika B. Cunliffe
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: John R. Kosko
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Darnell Redd, Jr., appeals the imposition of consecutive sentences by the trial court upon his resentencing. For the reasons stated herein, we affirm.

{¶2} In September 2010, Redd was indicted on 12 counts arising out of allegations that Redd shook his nearly two-month-old son and grabbed or pulled the baby by his legs. During the course of proceedings, the trial court engaged in a Daubert hearing regarding abusive head trauma, which was formerly known as shaken baby syndrome.

{¶3} Testimony was presented from the physicians who treated the victim. Dr. Richard Daryl Steiner diagnosed the eight-week-old as having bilateral retinal hemorrhages, acute subdural hemorrhage, hypoxic ischemic brain injury, and healing bilateral tibial corner fractures. He opined that the tremendous head injuries were the result of nonaccidental, nonimpact, abusive head trauma involving shaking or rotational acceleration, deceleration. He further described the leg fractures as metaphyseal fractures that were healing and had occurred weeks early. He stated that such fractures result when there is a shearing injury across the growth plate, which is seen when a baby is grasped by the leg and snatched or shaken around using the leg as a handle. His findings indicated that the victim had been the victim of physical abuse on multiple occasions over the previous two to three weeks. Dr. Lolita M. McDavid, who also examined the victim, opined that the victim suffered abusive head trauma that was consistent with a shake mechanism. She also diagnosed multiple leg fractures with callus formation, indicating they were healing. The defendant's medical expert,

Dr. Harold E. Buttram, testified to his belief that injuries cannot be caused to an infant's head by a shaking mechanism alone. He expressed that shaken baby syndrome has been a subject of debate and that he did not believe the syndrome was valid. He testified to other potential causes of the injuries. He conceded on cross-examination that the majority of the medical community, in particular pediatrics, does give acceptance to shaken baby syndrome and/or abusive head trauma in infants.

{¶4} Ultimately, Redd entered a guilty plea to two counts of endangering children, third-degree felonies, in violation of R.C. 2919.22(A), and the remaining counts were nolled. The two counts related to separate incidents, one involving the victim's broken legs and the other involving head trauma to the victim.

{¶5} At the time of Redd's original sentencing hearing, the victim was 19 months old. He did not walk, did not speak any words, was eating through a feeding tube, and had certain neurological disabilities. Nonetheless, he had been improving since the previous year and was progressing "slowly but surely." The trial court imposed consecutive sentences of 30 months each to be followed by a two-year period of community control.

{¶6} On appeal in *State v. Redd*, 8th Dist. Cuyahoga No. 98064, 2012-Ohio-5417, this court found that the original sentence was contrary to law because the trial court could not sentence a defendant to community control and prison for the same offense and because the trial court had not made all of the required findings to impose consecutive

sentences. The court did not rule out the possibility for consecutive sentences but, rather, indicated that from the record before it,

> the trial court will be hard pressed to make the required findings to impose consecutive sentences at the new sentencing hearing. According to the [presentence investigation report] and Redd's sentencing memorandum, Redd has no prior adult or juvenile criminal history and was rated the lowest possible risk of recidivism.

*Id*. at ¶ 18. The court affirmed Redd's convictions, vacated his sentence, and remanded the case for a new sentencing hearing. *Id*. at ¶ 21.

{¶7} Upon remand, the trial court held a sentencing hearing on February 22, 2012. Defense counsel requested that the court impose a community control sanction. Defense counsel indicated that Redd had no prior juvenile or adult criminal history record, that he was developmentally disabled with a full scale IQ of 66, that he had worked in the community throughout his teenage and adult years, that he was married with two children but had divorced since his incarceration, that the probation department found Redd to be in the lowest risk of recidivism, that he had complied with his court-supervised release program during the pendency of his case for a period of almost one year, that he had reported as directed and submitted all negative urine tests, and that he had exemplary behavior during his then 18 months of incarceration. Defense counsel also referenced letters of support written by Redd's family members and friends, which were attached to Redd's sentencing memorandum. Defense counsel further requested that if community control sanctions were not imposed, that the sentences be concurrent.

Redd addressed the court and expressed his remorse. Redd's aunt addressed the court in his favor.

{¶8} The state responded by noting the significance of the injuries to the child and that Redd had admitted to two incidents.

{¶9} The court considered the record, the oral statements made at the hearing as well as the original sentencing hearing, the presentence investigation report, the sentencing memorandum submitted by defense counsel, the court-supervised release report, and the purposes and principles of sentencing under R.C. 2929.11 and 2929.12. The court recognized that the victim was a small child, or baby, who suffered very serious and significant injuries and that there were two separate offenses of child endangering. One was associated with evidence of fractures to the victim's legs. The other was associated with an incident where the victim was taken to the hospital with severe head trauma.

{¶10} The court recognized the offender's relationship to the victim, as the father of the child, facilitated the offense. The court considered defense counsel's argument concerning Redd's lack of criminal history and low risk for recidivism, but found those factors did not take away from the significance of the offenses and the serious injuries suffered by the small child.

{¶11} The court found that a prison sentence is consistent with the purposes and principles of sentencing under R.C. 2929.11 and that the defendant was not amenable to a community control sanction. The court imposed a sentence of 30 months in prison on

each count, to be served consecutively. In imposing consecutive sentences, the trial court made each of the required findings. Additionally, the court advised Redd that upon his release from prison, he would be subject to three years of discretionary postrelease control. Credit was granted for time served.

**{¶12}** The state requested that the court elaborate upon the injuries to the victim. The court indicated that, prior to imposition of the original sentence, it had engaged in a Daubert hearing regarding shaken baby syndrome and that the information gleaned at the Daubert hearing made very clear to the court the significance of the injuries to the child. The court indicated that there was evidence and testimony concerning head injuries to the child, and at that time, the child exhibited other injuries, including bleeding on the brain, trouble eating resulting in the need for a stomach tube, and a broken tibia. The court stated as follows:

> [T]he Daubert hearing focused on testimony from the experts, the two doctors that had actually examined this child and gave their opinions, and also * * * from the doctor retained by the defense * * * to try to undermine the shaken baby syndrome.
>
> So the significance of these injuries in terms of the brain and head trauma and the developmental problems resulting from that shaken baby syndrome, that head trauma were very significant in [terms] of his incapacity, being on a feeding tube. He couldn't see at that point.
>
> And along with that, the evidence that was shown to the Court, or the testimony by the doctors, that there was evidence of a prior indication with the broken tibia. That's why there was a charge of child endangering, and he plead guilty to that because that was a separate and distinct injury to this child that preceded the shaken baby head injuries that resulted. * * *
>
> * * *

Yes. That was the basis for the consecutive sentences imposed in this case, given the nature and extent of the injuries to this child on two separate occasions of about a month or so apart * * *.

Again, my duty as the Judge is to protect the public and to make sure that the seriousness of the defendant's conduct and the injuries to this child is not demeaned by the sentence that's imposed.

{¶13} Defense counsel objected to the imposition of consecutive sentences. While the defense did not dispute injuries to the victim, it disputed the state's characterization of the injuries. Defense counsel argued that the medical report and doctors' testimony established that the broken leg entailed nondisplaced hairline fractures. Defense counsel further indicated that the victim, who was approaching the age of three years, was doing well: he could see and hear, and he was attempting to talk. Defense counsel further asserted that while the victim was delayed, so too is his father, and there was evidence that the victim was delayed at birth.

{¶14} Redd timely filed this appeal. In his sole assignment of error, Redd claims the trial court erred by imposing consecutive sentences because the findings were not supported by and/or were contradicted by the record.

{¶15} Under R.C. 2953.08(G)(2), an appellate court may overturn the imposition of consecutive sentences if (1) the sentence is "otherwise contrary to law," or (2) the appellate court clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4). *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11. Under current R.C. 2929.14(C)(4), when

imposing consecutive sentences, the trial court must first find that the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find the existence of one of the three statutory factors set forth in R.C. 2929.14(C)(4)(a)-(c). In this case, the trial court heard a considerable amount of evidence, gave proper consideration to the record, and articulated the appropriate findings. The trial court stated as follows:

> The Court is requiring the defendant to serve these terms consecutively, because the consecutive sentence is necessary to protect the public from future crime, or to punish the offender, and these consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and to the danger the offender poses to the public.
>
> And these two or multiple offenses were committed as part of one or more courses of conduct, and the harm caused by these two multiple offenses so committed was so great or unusual that no single prison term for any of the offenses as any part of any of the courses of conduct adequately reflect the seriousness of the offender's conduct.
>
> Again, this Court has the duty to protect the public and to not impose

this consecutive sentence in this Court's opinion would demean the seriousness of the conduct and the injuries to this small child.

**{¶16}** Redd does not dispute that the trial court made the necessary findings when imposing consecutive sentences. Instead, he claims that the trial court's findings are not supported by the record.

{¶17} Redd argues that the record does not show that the injuries the victim suffered were as severe as the court believed or that they were solely caused by Redd's actions. Redd focuses upon the nature of the leg fractures as nondisplaced hairline fractures of soft tissue. He also claims that the record does not support the conclusion that the head injuries were the cause of the victim's developmental problems or that the problems were intractable. He argues that the victim had demonstrated improvement in overcoming the injuries and that there was a family history of developmental and medical difficulties.

{¶18} While Redd references evidence that was favorable to him, the record also contains evidence showing significant head trauma to the victim, as well as leg injuries that arose from a separate incident. The examining doctors opined as to the nonaccidental nature of the injuries, found significant head trauma was caused to the victim, and found that the leg fractures resulted from a shearing injury across the growth plate that is seen when handling an infant by its legs. While there was evidence of improvement by the victim, the trial court properly focused upon the seriousness of the offender's conduct that resulted in serious injuries to the young child. The record supports the trial court's determinations in this regard.

{¶19} Redd also argues that the record contradicts the finding that consecutive sentences were necessary to protect the public. Redd claims he was overwhelmed with the rigors of caring for two young children and briefly lost his composure. He further references his lack of a prior criminal history, low risk of recidivism, and exemplary

criminal record. The trial court recognized these factors. However, the court could not ignore the evidence showing that these were traumatic, nonaccidental injuries and that more than one incident occurred. Also, the injuries were caused in his capacity as the parent and caretaker of the young victim. Although Redd is now divorced, he nonetheless remains the parent of two young children who are entitled to be given consideration for protection from future crime. The record supports the trial court's findings that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

{¶20} Additionally, the record supports the finding that the two separate offenses were committed as part of one or more courses of conduct and that the harm caused thereby was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct. Indeed, the record reflects the serious nature of the injuries inflicted, the young age of the victim who was the child of the offender, a pattern of abuse, and that multiple incidents occurred.

{¶21} Upon our review, we find that the trial court fully met the requirements of the applicable law, including the requirements of R.C. 2929.14. We are unable to clearly and convincingly find that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4).

{¶22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
KENNETH A. ROCCO, J., CONCUR